```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                  :
IN RE WESTINGHOUSE ELECTRIC                                       :
COMPANY LLC                                                       :
                                                                  :
----------------------------------------------------------------- :
                                                                  :
TIMOTHY ELLIS                                                     :
                                                                  :
                                           Appellant,             :
                                                                  :
                          -against-                               :
                                                                  :
W WIND DOWN CO LLC,                                               :
                                           Appellee.              :
                                                                  :
----------------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/17/2023

1:22-cv-1739-GHW

MEMORANDUM OPINION & ORDER

GREGORY H. WOODS, United States District Judge:

## I. INTRODUCTION

Timothy Ellis appeals from an order issued by the United States Bankruptcy Court of the Southern District of New York denying him leave to file a late administrative expense claim in a bankruptcy proceeding. Reviewing for abuse of discretion, this Court perceives no legal error in or clearly erroneous facts underlying the Bankruptcy Court's order. Accordingly, that order is AFFIRMED.

## II. BACKGROUND AND PROCEDURAL HISTORY[1]

Timothy Ellis, Appellant here, is a former employee of Westinghouse Electric Company LLC ("Original Westinghouse"). Dkt. No. 10 ("Appellant's Br.") at 5. He was terminated from his position on or about May 31, 2018, and he alleges that his termination was the result of age-based discrimination. *Id.* at 5–6; *see also id.* at 5 (Ellis filed a charge of discrimination with the EEOC on

---

[1] Unless otherwise noted "ECF" references are to the docket of the underlying bankruptcy proceeding: 17-10751-mew. "Dkt. No." references are to the docket of this case. The reader is referred to the underlying bankruptcy order for a more comprehensive description of the case's facts. *See generally* ECF 4650.

July 2, 2018). At and around the time Ellis was terminated, Original Westinghouse was engaged in a Chapter 11 bankruptcy proceeding. ECF 4650 (the "Order") at 2. On March 28, 2018—prior to Ellis's termination—the United States Bankruptcy Court of the Southern District of New York (the "Bankruptcy Court") had entered an order confirming Original Westinghouse's Chapter 11 bankruptcy plan (the "Confirmation Order"). *Id.* The Confirmation Order set the bankruptcy plan's Effective Date for August 1, 2018. *Id.* On the Effective Date, the parent company of Original Westinghouse would be sold, the proceeds of the sale and certain other assets would be held in the newly created W Wind Down Co LLC ("Wind Down Co.," or "Appellee"), and Original Westinghouse would emerge as a newly reorganized entity ("New Westinghouse"). *Id.* at 3. The Confirmation Order also defined "Administrative Expense Claims" as "claims of a kind specified in section 503(b) of the Bankruptcy Code, including costs and expenses incurred after the filing of the bankruptcy case up to and through the 'Effective Date.'" *Id.* And the Confirmation Order required all Administrative Expense Claims to be filed with the Bankruptcy Court no later than thirty days post-Effective Date, or by August 31, 2018 (the "Administrative Bar Date"). *Id.*

During this time, Ellis received notices from the Bankruptcy Court about the nature of the bankruptcy proceedings and the deadline to file a claim. By March 2018, he had received several such notices but ignored them because, he says, a human resources director at Original Westinghouse told him that they did not apply to him. *Id.* at 2.[2] On August 2, 2018, after his termination, Ellis received an additional notice confirming the Administrative Bar Date; he states that he "has no recollection of receiving [this] notice," and that if he did receive it, he "disregarded" it. Appellant's Br. at 20. Proof of service shows that this notice was sent to Ellis, and another court has found that he did receive it. *See* Order at 4 (noting proof of service on the docket, and the

---

[2] While oversimplified, the human resource director's guidance was not necessarily inaccurate at the time: In March 2018, Ellis was still employed at Original Westinghouse, and so his age discrimination claim against the company did not yet exist.

2

finding that Ellis received the notice in *Ellis v. Westinghouse Elec. Co.*, No. 18-cv-1442, 2020 WL 4499931, at *8–9 (W.D. Pa. Aug. 5, 2020)). Ellis, by the time he received the notice, was also represented by counsel. *See* Dkt. No. 10 App. 2 at 48 (Ellis arguing in a prior brief that the notice would not have reasonably advised him or "his employment lawyer" about Ellis's need to file his claim in the bankruptcy proceedings).

In any event, instead of filing a claim in the Bankruptcy Court, on October 26, 2018, Ellis filed a discrimination case against New Westinghouse in the District Court for the Western District of Pennsylvania (the "Pennsylvania Case"). Order at 5. That case did not name Wind Down Co. as a defendant. *Id.* In November 2019, New Westinghouse took two actions in response. First, it filed for summary judgment in the Pennsylvania Case, arguing that for Ellis to recover for his allegedly discriminatory discharge, he had to have sought recovery against Wind Down Co. in the Bankruptcy Court before the Administrative Bar Date. *Id.* Second, it filed a motion with the Bankruptcy Court asking it to compel Ellis to dismiss the Pennsylvania Case based on the bankruptcy plan and injunctions set forth therein. *Id.*

Ellis took no action in the Bankruptcy Court, but responded in the Pennsylvania Case by arguing that because his claims arose after the Confirmation Date, they could not be discharged through Old Westinghouse's bankruptcy. *Id.* at 6. At oral argument in that case on January 15, 2020, Judge Hornak and New Westinghouse's counsel had an exchange in which counsel expressed the view is that, "to preserve his claim," Ellis was required "to file the notice of claim" with the Bankruptcy Court. Dkt. No. 10 App. Pt. 1 Ex. D at 18:15–19:1. Counsel for New Westinghouse also stated on the record—presumably in earshot of Ellis's counsel—that Ellis's best option, because the Administrative Bar Date had passed, was to "file an untimely notice [with the Bankruptcy Court] and claim that there was cause for him to file an untimely notice . . . go to the Southern District of New York [Bankruptcy Court] and say, 'Here's the cause why [I] didn't file it on

3

or before August 31, 2018.'" *Id.* At the close of that hearing, Judge Hornak voiced concern that an upcoming hearing in the bankruptcy case in New York could change the landscape of his case. While he considered whether he had the authority to enjoin the bankruptcy proceedings altogether, he ultimately determined that "under the principles of [comity]," doing so would not be a "good idea." *Id.* at 57:12–19. Instead, he asked New Westinghouse to voluntarily attempt to continue the Bankruptcy Court hearing; if Westinghouse failed to do so, he stated he would "probably" enjoin New Westinghouse from proceeding further in the Bankruptcy Court. *Id.* at 58:2–7. New Westinghouse indeed adjourned the Bankruptcy Court hearing, which was never held. Order at 7.

Judge Hornak denied New Westinghouse's summary-judgment motion in the Pennsylvania Case, but certified that decision for interlocutory appeal to the Third Circuit Court of Appeals. *Id.* at 8. In its appellate brief, New Westinghouse reemphasized its view that Ellis could only seek recovery by requesting leave to filing a late claim in the Bankruptcy Court. *Id.* In his response brief, Ellis noted that he did not initially file in the Bankruptcy Court because—as he argues here—he disregarded notices he had received about it, but he also stated that proceeding in the Bankruptcy Court would have "forced [him] to litigate his claims in a forum not designed for resolution of employment discrimination claims," to "waive his rights to a jury trial," and perhaps would have precluded his ability to seek reinstatement. *Id.* at 8.

At the Third Circuit oral argument, Judge Ambro asked Ellis's counsel why he did not have the "typical reaction" of noting that "the first place you look is, do I possibly have a claim in the Bankruptcy Court, at least prophylactically file a claim in the bankruptcy case just to preserve my position." *Ellis v. Westinghouse Elec. Co. LLC*, No. 20-2867 (3d Cir. Apr. 6, 2021), Dkt. No. 40 ("Third Circuit Oral Argument") at 23:13–17. Counsel responded by noting that in bankruptcy court, "you waive a lot of your rights, starting with the right to a jury trial." *Id.* at 23:18–20. Judge Bibas then suggested that, if Ellis had timely filed a claim with the Bankruptcy Court or succeeded in

4

having that court grant late filing, that court could lift a stay to allow for the trial to go forward in another court, which would give Ellis an opportunity to proceed with his claims. *Id.* at 24:2–8.[3]

On August 30, 2021, the Third Circuit reversed the Western District of Pennsylvania's decision and granted New Westinghouse's summary-judgment motion. *Ellis v. Westinghouse Elec. Co., LLC*, 11 F.4th 221, 226 (3d Cir. 2021). Resolving an issue that "no federal appellate court had directly addressed," the Third Circuit held that claims—like Ellis's—that arise after the Confirmation Date but before the Effective Date of a bankruptcy can nonetheless be discharged in bankruptcy as the "costs and expenses" of that bankruptcy, and thus cannot be pursued against the discharged entity in subsequent litigation like the Pennsylvania Case. *Id.* Near the end of its decision, the Court wrote: "Our decision does not prevent Ellis from filing a claim in the Bankruptcy Court and asking it to accept the late filing 'for cause.'" *Id.* at 239 n.12 (quoting 11 U.S.C. § 503(a)). It expressed no view on how the Bankruptcy Court should assess such a request. *Id.*

On November 2, 2021, Ellis sought to belatedly file his claim in the Bankruptcy Court. Order at 10. In an opinion written by Judge Wiles, that court denied Ellis's motion. *Id.* at 22. Applying the factors set out in *Pioneer Investment Services v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993), Judge Wiles found that Ellis had not met his burden to establish "excusable neglect" because (1) the predominant factor—whether the delay in filing was within Ellis's control—cut against such a finding, (2) two other factors (the length of delay and possible prejudice to Wind Down Co.) also weighed against finding excusable neglect, and (3) that while the final factor (good faith) may have cut in Ellis's favor, it was not enough to overcome the other considerations weighing against excusing Ellis's neglect. *Id.* at 11–21. Judge Wiles also noted that, while the parties

---

[3] While Judge Bibas's comment implied that there was a stay on the bankruptcy court docket, there was—as described above—no official stay; New Westinghouse had merely adjourned a hearing pending additional litigation in the Pennsylvania case. *See* Order at 7.

agreed that the *Pioneer* factors governed the application of 18 U.S.C. § 503(a)'s "for cause" standard, to the extent section 503(a) was governed by a different standard, there was no other cause in the record that could justify late filing. *Id.* at 21.

On March 2, 2022, Ellis timely appealed the Bankruptcy Court's determination. Dkt. No. 1. He filed his appellate brief and related materials on May 2, 2022. Dkt. No. 10. He agreed that with the Bankruptcy Court that *Pioneer's* "excusable neglect" standard governed his claim, but argued that the court had "made erroneous factual findings which served as the underpinning for the denial of [his] request." *Id.* at 2, 16–17. Appellee filed its response brief on June 1, 2022. Dkt. No. 12 ("Appellee's Br."). This Court has jurisdiction over Ellis's appeal under 28 U.S.C. § 158(a). 28 U.S.C. § 158(a) ("The district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges.").

### III. LEGAL STANDARD

This Court reviews the Bankruptcy Court's denial of a request to file a late proof of claim for abuse of discretion. *See Midland Congeneration Venture Ltd. P'ship v. Enron Corp.*, 419 F.3d 115, 124 (2d Cir. 2005) ("Bankruptcy court decisions to deny a request to file late are reviewed for abuse of discretion.").[4] Abuse of discretion is "one of the most deferential standards of review." *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 121 (2d Cir. 2001); *see also In re Lawrence*, 293 F.3d 615, 624 n.7 (2d Cir. 2002) (noting that a court may set aside a an underlying decision under abuse-of-discretion review only if it "has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors"). Accordingly, a court abuses its discretion only where it "applies legal standards incorrectly or relies

---

[4] In his brief, Ellis raises seven issues as the "issues presented" in this case. *See* Appellant's Br. at 1–2. Each of these are sub-issues to the primary issue presented—whether the Bankruptcy Court erred in denying Ellis's request to late file his claim. *See id.* And Ellis agrees that abuse-of-discretion review applies here. *Id.* at 2.

6

upon clearly erroneous findings of fact, or proceed[s] on the basis of an erroneous view of the applicable law." *In re Harris*, 464 F.3d 263, 268 (2d Cir. 2006).

"Findings of fact are not clearly erroneous if the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety." *O'Rourke v. United States*, 587 F.3d 537, 540 (2d Cir. 2009) (per curiam). Put differently, "the factfinder's choice between competing views of the facts or events cannot be clearly erroneous." *SEC v. Razmilovic*, 738 F.3d 14, 35 (2d Cir. 2013); *see also In re Reilly*, 245 B.R. 768, 772 (2d Cir. B.A.P. 2000) ("To be clearly erroneous, a decision must strike [the Court] as more than just maybe or probably wrong; it must . . . strike [the Court] as wrong with the force of a five-week-old, unrefrigerated dead fish." (internal citations omitted)). "The appellant bears the burden on appeal of demonstrating that a court's findings of fact are clearly erroneous." *In re 189-30 Realty Corp.*, No. cv-06-1977, 2006 WL 2583743, at *2 (E.D.N.Y. Sept. 7, 2006).

## IV. DISCUSSION

Because Ellis agrees with the Bankruptcy Court on the law applicable to his motion, and because he cannot show that the Bankruptcy Court applied any legal standard incorrectly or relied upon clearly erroneous findings of fact, his appeal will be denied.

An abuse of discretion exists only where a court "applies legal standards incorrectly or relies upon clearly erroneous findings of fact, or proceed[s] on the basis of an erroneous view of the applicable law." *Harris*, 464 F.3d at 268. As noted above, Ellis agrees with the Bankruptcy Court's determination that *Pioneer* applies to Ellis's request to late file his claim in that court. *See* Appellant's Br. at 16–17; *see also* Order at 11 (the Bankruptcy Court noting the consensus of other bankruptcy courts that the "excusable neglect" standard in Bankruptcy Rule 9006 also governs 18 U.S.C. § 503(a)'s for-cause standard). He thus raises no allegation that the Bankruptcy Court "proceed[ed]

7

on the basis of an erroneous view of the applicable law." *Harris*, 464 F.3d at 268.[5]

Ellis does argue, however, that the Bankruptcy Court both "applie[d] legal standards incorrectly" and "relie[d] upon clearly erroneous findings of fact." *Id.* This Court disagrees on both counts.

### a. The Bankruptcy Court did not Incorrectly Apply any Legal Standard

Ellis raises two primary points regarding the Bankruptcy Court's allegedly incorrect application of law. First, he notes that under *Pioneer*, courts apply a "flexible standard" because "the determination" of whether a party's neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," and that excusable neglect is thus an "elastic concept." Appellant's Br. at 17 (quoting *In re DPH Holdings Corp.*, 434 B.R. 77, 83 (S.D.N.Y. 2010)); *see also id.* at 1 (Ellis's second issue presented, which registers his disagreement with the Bankruptcy Court's application of the excusable-neglect standard). Based on this language, Ellis emphasizes that "the Court must take into account of all of the relevant facts in the case in deciding whether or not a claimant's failure to timely file an administrative claim is the result of excusable neglect." Appellant's Br. at 17.

These statements are accurate, as the determination of excusable neglect is necessarily fact-bound. *See In re DPH*, 434 B.R. at 83. But to the extent that Ellis intends to suggest that the "flexibility" in *Pioneer's* standard operates as a one-way ratchet in favor of a late claimant, that contention is erroneous. To the contrary, the Second Circuit has emphasized that it has taken a "hard line" in its "cases addressing whether neglect is excusable." *Silivanch v. Celebrity Cruises, Inc.*,

---

[5] While Judge Wiles's analysis tracked the vast majority of bankruptcy courts in applying *Pioneer's* "excusable neglect" test to section 503(a) of the Bankruptcy Code, he also noted that even if that provision were governed by a different standard, he perceived no other cause in the record that would allow Ellis to late file his claim. Order at 11, 21. This Court agrees both that *Pioneer* governs the question of late claim filing and that, even if it does not, there is no other cause apparent from the record to permit Ellis's late filing. In any event, as noted, Ellis takes no issue with the application of *Pioneer* to his case. Appellant's Br. at 16–17.

333 F.3d 355, 368 (2d Cir. 2003) (internal quotation marks omitted); *see also* Order at 13 (recognizing this principle). So while courts must consider all of the relevant facts in making an excusable-neglect determination, the governing law does not tip the scales in favor of the party seeking to late file a claim. If anything, *Silivanch* and other cases suggest the opposite.

Second, Ellis takes issue with Judge Wiles's conclusion that, by not filing sooner in the Bankruptcy Court, Ellis made a legal mistake that provides little support for a finding of excusable neglect. Appellant's Br. at 18–19; *see* Order at 14–15; *see also* Appellant's Br. at 1 (Ellis's first issue presented, which relies on the novelty of his claim and the alleged lack of clarity about "whether he needed to file an administrative expense claim" to supply cause for his late filing). Ellis emphasizes that while "the [*Pioneer*] equities will rarely if ever favor a party who 'fail[s] to follow the clear dictates of a court rule,'" there was no clear legal rule in his case. *Silivanch*, 333 F.3d at 366 (quoting *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 250 (2d Cir. 1997)); *see* Appellant's Br. at 19 (Ellis arguing that because the Pennsylvania Case "was a matter of first impression in the United States, there was no applicable rule of law at all, let alone one that was clear and understandable").

Ellis is correct that his claim in the Pennsylvania case was a matter of first impression. *See Ellis*, 11 F.4th at 226. But he errs by arguing that this means that he could not make a legal mistake in this case; legal mistakes can exist even without a clear rule of law. *See, e.g., In re Manhattan Jeep Chrysler Dodge, Inc.*, 599 B.R. 247, 253 (S.D.N.Y. 2019) (finding that because courts had reached different results on the question of law underlying whether a bar date applied to a claimant's claims, relying on one favorable decision "was a risky thing to do," and that the claimant's decision "to put[ ] its faith in [this] mistaken legal conclusion" did "not constitute excusable neglect"). Ellis also misconstrues *Pioneer*. While failing to follow a clear court rule *precludes* a finding of excusable neglect under *Pioneer*, a lack of a clear rule does not *mandate* such a finding. Rather, the fundamental command of the lead *Pioneer* factor is that courts must examine "the reason for the delay [in filing],

9

including whether it was within the reasonable control of the movant." *Silivanch*, 333 F.3d at 366 (quoting *Pioneer*, 507 U.S. at 395); *see id.* (the Second Circuit noting that "we and other circuits have focused on" this factor); Order at 13 (recognizing the primacy of this *Pioneer* factor in the Second Circuit). As described in greater detail below, Judge Wiles examined the facts of the case and found that Ellis's decision not to file sooner in the Bankruptcy Court was within Ellis's reasonable control. That method correctly implemented *Pioneer*. In sum, this Court perceives no misapplication of *Pioneer* in Judge Wiles's decision, and therefore holds that the Bankruptcy Court did not "appl[y] [any] legal standard[ ] incorrectly." *Harris*, 464 F.3d at 268.

### b. The Bankruptcy Court did not Rely on any Clearly Erroneous Factual Findings

Ellis has likewise failed to satisfy his burden of showing that the Bankruptcy Court "relie[d] upon clearly erroneous findings of fact." *Harris*, 464 F.3d at 268; *see In re 189-30 Realty Corp.*, 2006 WL 2583743, at *2. Ellis takes issue with five factual conclusions presented by the Bankruptcy Court. *See* Appellant's Br. at 1–2 (issues three through seven). As four of those five issues—issues three, four, five, and six—turn on similar underlying facts, the Court will first take them up in a group before proceeding to issue seven.

The Bankruptcy Court did not clearly err by finding (1) that the delay in seeking relief was "entirely in [the] control" of Ellis and his counsel, (2) that this delay—at least after November 2019—was "attributable solely to [their] conscious choices," (3) that after November 2019, the bankruptcy issues had been "explained in clear detail" in the Pennsylvania Case and Ellis's "recommended course of action was also plainly identified," or (4) that Ellis had not offered any explanation "other than his desire to be relieved from the consequences of this own choices" for his late filing. Order at 15, 17, 20; *see also* Appellant's Br. at 1–2. These factual findings all turn on the Bankruptcy Court's broader determination—which itself is not clearly erroneous—that Ellis's decision not to file in the Bankruptcy Court, at least after November 2019, was a "tactical choice[ ]."

10

Order at 19.[6]

First, there is ample evidence in the record to support Judge Wiles's conclusions that after November 2019, Ellis was on notice that the most prudent course of action would be to file a protective claim in the Bankruptcy Court, and that he could have done so. As Judge Wiles recognized, New Westinghouse's November 2019 brief in the Pennsylvania Case first suggested that Ellis should have filed his claim in the Bankruptcy Court. *See* Order at 5. Then, at oral argument in the Western District of Pennsylvania in January 2020, New Westinghouse's counsel specifically suggested that Ellis seek leave to file an untimely claim notice with the Bankruptcy Court. *Id.* at 6. And at oral argument in the Third Circuit in April 2021, multiple appellate judges raised the possibility of Ellis filing a claim at least "prophylactically" in the Bankruptcy Court. Third Circuit Oral Argument at 23:13–24:8. Each of these warnings put Ellis on notice that it would be prudent to file a claim in the Bankruptcy Court. As a result, Judge Wiles's conclusion that Ellis's "recommended course of action was [ ] plainly identified" for Ellis long before he filed a claim with the Bankruptcy Court was not clearly erroneous.

Second, Judge Wiles's determinations that Ellis's decision *not* to file his claim in the Bankruptcy Court until November 2021 was his own tactical choice, and that his alternative explanations were unconvincing, also did not represent clear error. As just described, Ellis was repeatedly notified that filing a claim in the Bankruptcy Court would be prudent. Yet Ellis, for the

---

[6] While Ellis takes issue with the idea that he should have acted on notices he received about the Bankruptcy Court earlier than November 2019, the Bankruptcy Court's decision does not rely on that failure, instead focusing primarily on the post-November 2019 time period. *See* Order at 16 (noting that even if Ellis was somehow confused about his responsibilities, "any such confusion was plainly cleared up no later than November 2019, when [New Westinghouse] filed its summary judgment motion in the Pennsylvania [Case]"). Like the Bankruptcy Court, this Court has "strong doubts" about Ellis's representation that he was confused about the notice sent to him in August 2018. Proof of service shows that this notice was sent to Ellis, and another court has found that he did receive it. Order at 17; *see id.* at 4 (noting that proof of service shows that Ellis was served with this notice); *Ellis*, 2020 WL 4499931, at *8–9 (the Pennsylvania District Court finding that he received this notice); Dkt. No. 10 App. 2 at 48 (Ellis noting that he was represented by counsel by this time). But in any event, the Bankruptcy Court did not rely on any pre-November 2019 findings in its order.

11

several years between November 2019 and November 2021, did not file such a claim and identified what Judge Wiles could reasonably conclude were tactical reasons why he preferred not to proceed in the Bankruptcy Court: doing so would have, in the words of Ellis's Third Circuit brief, "forced [him] to litigate his claims in a forum not designed for resolution of employment discrimination claims," to "waive his rights to a jury trial," and may have precluded his ability to seek reinstatement. Order at 8 (citing Brief for Appellee, Case No. 20-2867, ECF No. 24, *Ellis v. Westinghouse Electric Co., LLC* (3d Cir. Feb. 17, 2021)); *see also id.* at 9 (noting that Ellis's counsel also cited, at Third Circuit oral argument, the fear of losing a jury trial as a reason he chose not to proceed in the Bankruptcy Court). From these facts, it was not clear error for Judge Wiles to conclude that Ellis made the conscious choice for tactical reasons not to proceed in the Bankruptcy Court. Ellis's counsel's own statements explaining the basis for the decision to pursue litigation outside of the bankruptcy process by themselves provide sufficient support for this finding.[7]

Judge Wiles also did not clearly err in finding Ellis's arguments to the contrary unconvincing. Ellis first contends that it was not him, "but rather [New] Westinghouse, that chose the forum in which this issue would be litigated." Appellant's Br. at 4. But Ellis—not New Westinghouse—first filed his claim in the Pennsylvania Case (rather than Bankruptcy Court). *See* Order at 5. So Ellis's statement must be read not as saying that New Westinghouse originally chose the Pennsylvania forum, but that by filing the summary judgment motion first in that forum, it "chose" to maintain that forum—and not the Bankruptcy Court—as the primary locus for Ellis's litigation. *See* Appellant's Br. at 4.

---

[7] These same facts also provide support for, and preclude any finding of clear error as to, other specific findings in the Order that Ellis takes issue with. *See* Appellant's Br. at 15 (Ellis contesting that he knew of the "practical consequences" of not acting in the Bankruptcy Court, that he had been informed that "a protective motion should be filed" in that court, that he pursued his claims against New Westinghouse to the exclusion of alternatives, that he knew the risks he was taking and potential consequences if his arguments in Pennsylvania failed, and that Judge Hornak suggested the possibility of Ellis filing in the Bankruptcy Court).

12

There are, however, several problems with this argument. First, as Appellee notes, Ellis's account conflates New Westinghouse (which Ellis sued in Pennsylvania) with Wind Down Co., which Ellis did not sue in Bankruptcy Court until November 2021. *See* Appellee's Br. at 3. New Westinghouse and Wind Down Co. are separate legal entities. So Ellis cannot credibly charge Wind Down Co.—Appellee here—with choosing to initiate or keeping any action in Pennsylvania; again, until Ellis finally filed his claim with the Bankruptcy Court, Wind Down Co. was not a party to any case. *See* Order at 18–19 (recognizing the distinction between New Westinghouse and Wind Down Co.).

Moreover, even setting aside Ellis's conflation of New Westinghouse and Wind Down Co., Judge Wiles did not clearly err in concluding that filing a claim in the Bankruptcy Court remained a viable option for Ellis at all times. Ellis argues that language used by Judge Hornak in the Pennsylvania Case "led him to believe that he was precluded from proceeding in the Bankruptcy Court." Appellant's Br. at 23. But there is little, if any, support in the record for that construction of Judge Hornak's statements. As relevant, in an exchange with New Westinghouse's counsel, Judge Hornak asked about the possibility that Ellis "could file" a claim "as a precautionary matter" in the Bankruptcy Court "tomorrow morning." Dkt. No. 10 App. Pt. 1 Ex. D at 18:15–19:1. Towards the end of the hearing, moreover, Judge Hornak considered but specifically *rejected* the idea of enjoining bankruptcy proceedings. *Id.* at 57:12–19 (finding that enjoining the proceedings would not be a "good idea" "under the principles of [comity]"). Instead, he asked New Westinghouse—not Ellis—to adjourn an upcoming hearing in the Bankruptcy Court, *id.* at 58:2–7, which New Westinghouse did, Order at 7. In short, Judge Hornak discussed the possibility of Ellis filing a Bankruptcy Court claim and gave Ellis *no* instructions that could be read as precluding him from taking any actions in the Bankruptcy Court. The record thus does not reveal clear error in Judge Wiles's evaluation of Judge Hornak's statements. If anything, to the extent that Ellis (and his counsel) interpreted Judge

13

Hornak's statements as "not permit[ting] any further action" in the Bankruptcy Court, that was in error.  Appellant's Br. at 24.

In sum, an evaluation of the factual record shows that Judge Wiles did not clearly err in finding that Ellis's delay in seeking relief was a tactical choice attributable to his conscious choices, and that the decision to file or not in the Bankruptcy Court was within Ellis's control at all times.[8]

Finally, Ellis has not demonstrated clear error in Judge Wiles's conclusion that Wind Down Co. would be prejudiced if the Bankruptcy Court granted Ellis permission to file his claim in November 2021.  Appellant's Br. at 2 (issue seven); *see* Order at 20–21.  Ellis points to statements made by Judge Wiles during oral argument in the Bankruptcy Court suggesting agreement with Ellis's position that late filing would not prejudice Wind Down Co.  *See* Appellant's Br. at 12–14 (Judge Wiles's statements, including that Wind Down Co. knew of Ellis's claims before they were filed, and that under this case's "weird circumstances"—and given the parallel Pennsylvania Case— he may not have acted on an earlier-filed claim even had Ellis filed one).  And Ellis takes issue with Judge Wiles's ultimate determination that Wind Down Co. was prejudiced by Ellis's late filing.  *See* Appellant's Br. at 2.

This argument is meritless.  In the Order, Judge Wiles explained that Wind Down Co. would be prejudiced by a late filing because it has "almost completed the resolution of its claims," is attempting to make final distributions, and because allowing late filing of Ellis's claim would "result in further delays and would be prejudicial to Wind Down Co. and to other creditors."  Order at 20.  Ellis does not object to any of these conclusions, let alone show them to be clearly erroneous.  And

---

[8] One contested statement by Judge Wiles seems to have been hyperbole.  Stating that Ellis has not offered any explanation for his delay in filing "other than his desire to be relieved from the consequences of his own choices" is not perfectly accurate.  *See* Order at 20.  But Judge Wiles's order makes clear that he did, indeed, consider Ellis's arguments to support his request for excusable neglect.  It would have been more precise to say that the alterative explanations Ellis had offered were unconvincing (for the reasons explained in Judge Wiles's Order and in this opinion).  But this hyperbole does not represent clear error, particularly given that Judge Wiles clearly considered Ellis's explanations and that Judge Wiles's fundamental conclusion—that Ellis knowingly made the tactical litigation choice not to file his claim in the Bankruptcy Court—was not clearly erroneous.

the underlying premise of Ellis's argument on this point—that asking difficult questions at oral argument for counsel precludes a judge from later siding with that counsel's client—cannot be credited, lest judges begin to fear that probing questions at oral argument will be used against them on appeal.

The Court has considered the remainder of Ellis's arguments and finds them unpersuasive. At bottom, Ellis does not attempt to demonstrate that Judge Wiles "proceed[ed] on the basis of an erroneous view of the applicable law," and his quibbles with the Order do not show that Judge Wiles "applie[d] legal standards incorrectly" or "relie[d] upon clearly erroneous findings of fact." *Harris*, 464 F.3d at 268.  So the Bankruptcy Court's judgment is affirmed.

## V. CONCLUSION

For the reasons stated above, the Bankruptcy Court's February 15, 2022 decision and order is AFFIRMED.  The Clerk of Court is directed to enter judgment in favor of Appellee and to close this case.

SO ORDERED.

Dated:  March 17, 2023
New York, New York

GREGORY H. WOODS
United States District Judge